IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JOHN DASTA                                  *

    v.                                       *     CIVIL ACTION NO. AMD-08-387

WARDEN BOBBY SHEARIN                        *
DR. LEONARDO F. GIRON
                                                  *
                                             ***

MEMORANDUM

I.

Plaintiff filed this hybrid civil rights/torts action for damages and declaratory and injunctive relief in the United States District Court for the District of Columbia against prison staff from various local and federal institutions, U.S. Marshals, U.S. Bureau of Prisons ("BOP") officials, and the U.S. Attorney General. *See Dasta v. Lightfoot, et al.,* Civil Action No. UA-04-1439 (D. D.C. 2004). The complaint concerns the treatment plaintiff received for his back, hip, and leg pain when confined at various prison facilities. At the time he filed the action, plaintiff was confined at the Federal Medical Center in Rochester, Minnesota ("FMC-Rochester"). Paper No. 2.

On August 25, 2004, the case was transferred to the United States District Court for the District of Minnesota. *See Dasta v. Lightfoot, et al.,* Civil Action No. MDJ-04-4475 (D. Minn. 2004).[1] Thereafter, plaintiff amended the complaint to name a number of prison and medical staff at FMC-Rochester, the Federal Correctional Institution in Cumberland, Maryland ("FCI-Cumberland"), the Director of the BOP, and named and unnamed U.S. Marshals. Paper No. 4. In 2005, the Minnesota district court dismissed the complaint with prejudice; on appeal the United States Court of Appeals for the Eighth Circuit affirmed in part and reverse in part. *See Dasta v. LeBlanc*, 132 Fed. Appx 98, 2005 WL 1220392 (8th Cir. 2005). Consequently, plaintiff's claims against five defendants

---

[1] The history of the case is taken from the civil docket in *Dasta v. Lightfoot, et al.*, Civil Action No. MDJ-04-4475 (D. Minn.).

were reinstated. These claims included allegations that in 2002, at FCI-Cumberland, Dr. Leonardo Giron committed medical malpractice and was deliberately indifference to plaintiff's unstable, worsening, and painful back condition and that FCI-Cumberland Warden Bobby Shearin "turned a blind eye to Dr. Giron's deliberate indifference." *Id.*

Plaintiff further amended his complaint in September 2005, therein delineating his claims against the five remaining defendants, including Giron and Shearin. Paper No. 9. A motion for summary judgment was filed on behalf of all defendants. In particular, the motion sought to dismiss the claims against defendants Giron and Shearin for lack of personal jurisdiction and to dismiss claims for malpractice at FCI-Cumberland as unexhausted and time-barred. In June 2006, an order was entered adopting the report and recommendation of a magistrate judge denying several of plaintiff's non-dispositive motions. These rulings were affirmed by the Eighth Circuit. *See Dasta v. Shearin, et al.*, 230 Fed. Appx. 637, 2007 WL 2142297 (8th Cir. July 27, 2007).

On January 22, 2008, Judge Michael J. Davis adopted a report and recommendation and granted in part and denied in part the motion for summary judgment filed by Giron and Shearin. As a result, the constitutional claims against defendants Giron and Shearin were transferred to this court[2] and summary judgment was entered in favor of the remaining three FMC-Rochester defendants.

Plaintiff filed a notice of appeal to the Eighth Circuit on February 8, 2008. Pursuant to Judge Davis's order, the case was transferred to this court and received on February 12, 2008. Upon the request of the Clerk for the United States District Court for the District of Minnesota, however, the

---

[2]The medical malpractice claim arising out of medical treatment at FCI-Cumberland was dismissed for failure to exhaust administrative remedies under the Federal Tort Claims Act.

undersigned transferred the case back to that court in light of the "premature" transfer pending the appeal before the Eighth Circuit. The instant matter was closed.

On May 5, 2008, the Eighth Circuit dismissed the appeal for lack of jurisdiction. As plaintiff's appeal in the Eighth Circuit was dismissed, the matter was transferred anew to this district on October 14, 2008. Defendants Shearin and Giron were ordered to file an answer as to the remaining Eighth Amendment *Bivens*[3] claims concerning plaintiff's medical care while confined at FCI-Cumberland in 2002.

Defendants have filed a motion to dismiss or for summary judgment. Paper No. 48. Plaintiff filed his opposition and a cross-motion for summary judgment. Paper Nos. 50-52. The case is ready for consideration. No hearing is necessary. *See* Local Rule 105.6. (D. Md. 2008). For reasons to follow, defendants' motion to dismiss or for summary judgment shall be granted.

II.

The purpose of a motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), is to test the sufficiency of a plaintiff's complaint. *See Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999). In ruling on a 12(b)(6) motion, all well-pleaded allegations in the complaint are to be taken as true and all reasonable factual inferences are to be drawn in plaintiff's favor. *Id.* at 244. Although a complaint need not contain detailed allegations, the facts alleged must be enough to raise a right to relief above the speculative level and require "more than labels and conclusions," as " 'courts are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1964-65 (2007). The complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974. Once a claim has been stated

---

[3]*See Bivens v. Six Unknown Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. *Id*. at 1969.

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of showing that there is no genuine issue as to any material fact. However, no genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *See Celotex*, 477 U.S. at 322-323. Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure when there is no genuine issue as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law. In *Anderson v. Liberty Lobby, Inc*., the Supreme Court explained that, in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." 477 U.S. at 249 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id*. at 252.

In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in a light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *see also E.E.O.C. v. Navy Federal Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005). The mere existence of a "scintilla" of evidence in support of the non-moving party's case is not sufficient to preclude an order granting summary judgment. *See Anderson*, 477 U.S. at 252.

### III.

With the above standards in mind, the court will review plaintiff's claims based upon the record before the Court. The constitutional claims raised against Shearin and Giron relate to the medical treatment plaintiff received for pain he was experiencing for his back, hip, and leg while confined at FCI-Cumberland. Plaintiff complains that defendants were deliberately indifference to his back condition, alleging that upon his arrival at FCI-Cumberland they allowed a delay of many months before he received an MRI. He complains that he did not receive proper medical attention in the form of an operation, appropriate pain medication, a lumbrosacral back brace, and access to a wheelchair, cane, or an extra mat on his sleeping bunk.

### A.

Defendants, the former Warden and Medical Officer at FCI-Cumberland, assert that plaintiff is serving a 120-month sentence for engaging in monetary transactions in property derived from unlawful activity in violation of 18 U.S.C. § 1957.[4] He has served his federal sentence at various BOP facilities. For purposes of review, the court observes that plaintiff was confined at FCI-

---

[4] According to the Bureau of Prisons inmate locator, Plaintiff is currently housed at the CCM in Atlanta, Georgia. His release date as of September 8, 2009 is October 4, 2009.

5

Cumberland for a seven-month period from March 18, 2002, to October 24, 2002. Paper No. 48, Ex. 1.

According to Dr. Giron, during plaintiff's March 20, 2002, admission and orientation physical examination at FCI-Cumberland, he reported lower back pain with left radiculopathy.[5] He was prescribed a course of the steroid Prednisone[6] and a request was made for a lumbar x-ray. Plaintiff was placed on the Chronic Care Clinic ("CCC") list so that staff could monitor his other conditions, *i.e.* diabetes and hypertension. Giron affirms that such inmates are seen at least once every three months to monitor their condition.

On April 12, 2002, plaintiff was seen on an emergency basis after being sent to the medical department by the Associate Warden because of complaints of severe lower back pain. Upon his arrival in the medical department, however, plaintiff stated that there was no change in his chronic lower back pain. Defendants maintain that plaintiff had a history of lower back pain with radiation to the posterior left leg since he reportedly fell at the Allegheny County Jail in Pittsburg, Pennsylvania, in November 2001. Medical staff evaluated plaintiff and reported that he appeared to be in mild distress due to lower back pain. He was scheduled for a CCC appointment and educated on the "treatment plan" and weight reduction. On April 15, 2002, plaintiff was examined in the CCC by Dr. Giron who noted that plaintiff had an atrophy of the left thigh muscle and that his back was tender. Giron educated plaintiff about a treatment plan to include daily walking and a low carbohydrate diet. Motrin was continued for pain relief and Giron also noted that a request should

---

[5] Radiculopathy is a disorder of the spinal nerve roots. *See* Stedman's Medical Dictionary ("Stedman's") 1502 (27th Edition 2000).

[6] It is maintained that Motrin was the only pain medication plaintiff was taking upon his arrival at FCI-Cumberland.

be made for an orthopedic consultation.

On May 2, 2002, defendant Giron again examined plaintiff in the CCC. Giron noted that plaintiff was not in any acute distress and had minimal tenderness in his lower back. He voiced subjective complaints of left buttock and left medial thigh pain, and requested more diabetes medication. His medications were refilled and Neurontin, a pain medication prescribed specifically for nerve pain, was added to his pain management regimen. The following day Giron submitted a request for an orthopedic consultation and plaintiff was scheduled for a follow up appointment in four weeks.

On May 25, 2002, an orthopedic specialist examined plaintiff and noted lower back strain with L4-L5 spondylolisthesis[7] of the L4-L5 vertebra and quadriceps atrophy (wasting away of the thigh muscles). The specialist recommended that plaintiff be prescribed a non-steroidal anti-inflammatory drug ("NSAID") and a muscle relaxant. He further suggested that plaintiff be evaluated by a neurologist in light of the atrophy. The orthopedist's notes were reviewed by medical staff three days later. A decision was made to add the muscle relaxant Baclofen to plaintiff's pain management regimen. In addition, a request was made for a neurology consult.

On May 31, 2002, plaintiff was seen in the CCC for a follow-up appointment regarding his lower back pain. He maintained that he was still having lower back pain radiating to his left lower extremity but claimed that the Neurontin had eased his pain symptoms. Examination revealed that plaintiff's back was mildly tender but that he was not in acute distress. The Neurontin and Motrin dosages were increased and plaintiff was counseled to continue working on his diet and exercise

---

[7]Spondylolisthesis is the forward movement of the body of one of the lower lumbar vertebrae on the vertebrae below it, or upon the sacrum. *Stedman's* at 1678.

programs. On July 9, 2002, plaintiff received a consultation with Dr. Kheder Ashker, a neurosurgery specialist, who determined that the symptomotology was consistent with sciatica[8] most likely due to a "HNP" or herniated nucleus pulposus. Ashker recommended an MRI of the lumbar spine. On July 11, 2002, Dr. Giron reviewed the neurosurgeon's notes and submitted a request for the MRI. The MRI was approved on July 18, 2002, and conducted on July 30, 2002. The results revealed a disc herniation and spondylolisthesis at the L4-L5 vertebrae, as well as disc herniation at the L3-L4 vertebrae.

On July 30, 2002, plaintiff was seen by Nurse Practitioner ("NP") Virginia Giroux in sick call complaining that his back pain had increased in intensity over the preceding 48-hour period. He reported that he had pain radiating down his left posterior thigh, but denied any new injury or trauma or bowel or bladder problems. Plaintiff was objectively observed ambulating slowly with a steady gait and was not found to be in any acute distress. Giroux assessed plaintiff with exacerbated lower back pain and increased his Neurontin medication to help with pain management.

On August 19, 2002, plaintiff reported to CCC for a follow-up appointment regarding his lower back pain. He stated that he was still having lower back pain on and off and that the pain radiated to his left lower extremity but that the Neurontin was helping his discomfort. Plaintiff's medications were reviewed and continued.

On August 28, 2002, plaintiff was re-evaluated by Dr. Ashker. Ashker conducted flexion-extension x-rays of the lumbar spine that same day. The tests revealed an "unstable spine with exacerbation of the spondylolisthesis at the L4-L5 level, spondylolysis at the L4-L5 level, and

---

[8]Sciatica involves pain in the lower back and hip radiating down the back of the thigh into the leg, initially attributed to sciatic nerve dysfunction, but now known to usually be due to herniated lumbar disk compromising the L5 or S1 root.  *Stedman's* at 1602.

significant disc herniation at the L4-L5 level." He recommended a lumbar laminectomy, discectomy, and a fusion of the L4-L5 vertebrae. Ashker noted that plaintiff may require pedical screws and plating and also recommended that he be transferred to another BOP institution where this type of operation was more commonly performed. Dr. Giron initiated plaintiff's surgery consult and transfer to a medical center. Two months later, on October 24, 2002, plaintiff was transferred to the Federal Medical Center in Rochester, Minnesota.[9]

Dr. Giron maintains that plaintiff's request for an extra mattress could not be accommodated as the BOP does not allow multiple mattresses per inmate for security reasons. He further opines that plaintiff did not exhibit any signs that walking aids such as a wheelchair were needed as he was able to walk without difficulty while confined at FCI-Cumberland and no such aids were recommended by the specialists that examined plaintiff. Giron does acknowledge that on August 28, 2002, the neurosurgeon made a recommendation that plaintiff receive a lumbrosacral back brace and that there is no notation that plaintiff received the brace prior to his October 24, 2002 transfer out of FCI-Cumberland.

In his opposition and cross-motion for summary judgment plaintiff asserts that defendants provide no basis for dismissal and have relied on a "vague" argument of administrative exhaustion. He asserts, without providing any supporting documentation or explanation, that the "administrative

---

[9]Plaintiff's prior civil case shows that after his arrival at FMC-Rochester in 2002, he was referred to a number of specialists at the Mayo Clinic. *See Dasta v. Lightfoot, et al.,* Civil Action No. MDJ-04-4475 at Paper No. 123, Report and Recommendation of U.S. Magistrate Judge Raymond L. Erickson (D. Minn.). A number of non-surgical programs, including physical therapy, were first conducted. In December 2002, a neurologist at the Mayo Clinic examined plaintiff, reviewed his prior MRI, and found that the MRI showed spondylolisthesis and a possibility of radiculopathy and peripheral neuropathy. Further evaluation and continuation of non-surgical programs were recommended. Plaintiff was continued on physical therapy and subsequently received nerve block treatment in 2003. He had the surgery in January 2004.

9

process was exhausted before the filing of this action…" Plaintiff further points to incidents of prisoner abuses at the Abu Graib, Guantanamo, and the Metropolitan Detention Center in New York City as evidence of "standard operating procedure" and a pattern and practice of mistreatment in the American prison system. He argues that the case should go forward for presentation to a jury.

B.

Defendants argue that plaintiff's claims should be dismissed due to his failure to exhaust his administrative remedies.[10] Title 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Proper exhaustion of administrative remedies demands compliance with an agency's deadlines and other critical procedural rules because "no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 126 S.Ct. 2378, 2385-86 (2006). Exhaustion under §1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendant(s). *See Jones v. Bock*, 127

---

[10]The instant complaint falls under the exhaustion mandate of 42 U.S.C. § 1997e(a), and plaintiff's medical claims must be dismissed unless he can show that he has satisfied the administrative exhaustion requirement or that defendants have forfeited their right to raise non-exhaustion as a defense. *See Chase v. Peay*, 286 F.Supp.2d 523, 528 (D. Md. 2003).

S.Ct. 910, 919-22 (2007); *Anderson v. XYZ Correctional Health Services, Inc.*, 407 F.2d 674, 682 (4th Cir. 2005).

The requirement for exhaustion of administrative remedies can be either statutorily or judicially imposed. Statutory exhaustion requirements are mandatory, while the judicial, or common-law, exhaustion doctrine is discretionary and includes a number of exceptions. *See Beharry v. Ashcroft*, 329 F.3d 51, 56-57 (2[d] Cir. 2003). In *Booth v. Churner*, 532 U.S. 731 (2001), the Supreme Court expressly found that Congress had statutorily mandated exhaustion under 42 U.S.C. § 1997e(a) and "we will not read futility or other exceptions into statutory exhaustion requirements." *Id*. at 741.

Prior to filing this case, plaintiff filed an administrative remedy request at FCI-Cumberland on October 2002, requesting a back brace from the medical department. The Warden responded to the remedy with an explanation and closed the grievance. Plaintiff, however, did not file an appeal of Warden Shearin's response and therefore did not exhaust his remedies with regard to his medical treatment under 28 C.F.R. §§ 542.14-15. Plaintiff has been called upon to refute defendants' affirmative defense and documentation of non-exhaustion. Instead, he has provided a conclusory assertion which does not demonstrate exhaustion. Accordingly, the complaint is subject to dismissal for non-exhaustion.

Alternatively, even if plaintiff had satisfied exhaustion requirements, the court would find that his FCI-Cumberland health care for his back and leg pain more than meets constitutional standards.[11] Plaintiff must first satisfy the "objective" component by illustrating a serious medical

---

[11]Shearin argues that he had no personal involvement in plaintiff's medical care. While supervisory liability may be possible in some claims, plaintiff has failed to establish that: (1) Shearin had actual or constructive knowledge that medical staff were engaged in conduct that posed a pervasive risk of

11

condition. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992); *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995); *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998). Plaintiff has satisfied this first prong; he received a diagnosis of spondylolisthesis, which eventually required surgery. Plaintiff must then prove the second subjective component of the Eighth Amendment standard by showing deliberate indifference on the part of prison personnel. *See Wilson v. Seiter*, 501 U.S. 294, 303 (1991) (holding that claims alleging inadequate medical care are subject to the "deliberate indifference" standard outlined in *Estelle*, 429 U.S. at 105-06). "[D]eliberate indifference entails something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result."[12] *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). Personnel "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." *Id*. at 837.

C.

The court concludes there is no genuine issue of material fact with respect to plaintiff's constitutional claim regarding his medical treatment. During the seven-month period in question, plaintiff was continuously monitored and seen by FCI-Cumberland nurses and physicians for his complaints of lower back pain and radiating pain to the left leg. The recommendations for evaluation

---

constitutional injury to plaintiff; (2) Shearin's response to that knowledge was so inadequate as to show deliberate inference to or tacit authorization of the allege offensive practices; and (3) there was an affirmative causal link between Shearin's inaction and the alleged constitutional injury. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). As FCI-Cumberland Warden in 2002, Shearin was entitled to rely on the medical expertise of health care providers. *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990).

[12]"[A]ny negligence or malpractice on the part of....doctors in missing [a] diagnosis does not, by itself, support an inference of deliberate indifference." *Johnson v. Quinones* 145 F. 3d at 166. Without evidence that a doctor linked presence of symptoms with a diagnosis of a serious medical condition, the subjective knowledge required for Eighth Amendment liability is not present. *Id*. at 169.

and treatment, while conservative, included: (1) prescribing Motrin, Prednisone and Neurontin for pain and the muscle relaxant Baclofen; (2) recommending exercise and weight-control programs; and (3) referring plaintiff for an MRI of the lumbar spine and examinations by an orthopedic specialist and neurosurgeon. After initial and follow-up evaluations by the orthopedic specialist and neurosurgeon, plaintiff was diagnosed with spondylolisthesis and surgery was subsequently recommended at by a neurosurgeon an institution familiar with the surgical process. There is simply no evidence that plaintiff's medical needs were deliberately disregarded by FCI-Cumberland staff. That plaintiff was not provided the treatment at FCI-Cumberland as soon as he wished does not amount to a claim of deliberate indifference under the Eighth Amendment. While inmates have a right to adequate medical care, they do not have a right to choose a specific type of treatment and to receive same at the time of their choosing.[13]

IV.

For the above reasons, defendants' motion to dismiss or for summary judgment shall be granted and plaintiff's motion for summary judgment shall be denied. An Order follows.


Date: September 8, 2009                    /s/
                                           Andre M. Davis
                                           United States District Judge

---

[13] An inmate must show that the course of treatment the doctors chose was medically unacceptable in light of the circumstances and that they chose this course in conscious disregard of an excessive risk to the prisoner's health. *See Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).